# HARRISON v. AUTO SECURITIES CO. et al.

No. 4473. Decided April 2, 1927. Rehearing Denied July 6, 1927.
(257 P. 677.)

*Irvine, Skeen & Thurman,* of Salt Lake City, for appellants.

*O. K. Clay,* of Price, for respondent.

GIDEON, J.

In this case plaintiff seeks to recover judgment against defendants for the conversion of a certain Gray sedan automobile alleged to be her property. The prayer of the complaint is for judgment for the value of the car and for damages. Plaintiff had judgment in the court below, and defendants appeal. No objection is made to the sufficiency of the pleadings. We shall not, therefore, refer thereto. The case was tried to the court sitting without a jury. The court made findings of fact and conclusions of law awarding judgment to plaintiff for the value of the car.

It appears from the record, and it is found by the court, that the Auto Securities Company is a Utah corporation, of Salt Lake City, and that its chief business is handling automobile paper; that is to say, advancing funds on automobile sales contracts made by dealers in selling automobiles. The M. L. Graham Company is engaged in buying and selling automobiles. It is doing business in Salt Lake City. This firm held the state agency for an automobile designated the "Gray" car. In November, 1924, that company sold to one L. W. Borst a Gray sedan, 1924 model. Part of the purchase price was paid. By the terms of the sale the seller, M. L. Graham Company, retained title to the automobile until the balance of the purchase price was paid. The M. L. Graham Company transferred this contract of sale to the Auto Securities Company and in the transfer guaranteed the pay-

ment of the debt. In March, 1925, the M. L. Graham Company repossessed the said car and had it in its place of business in Salt Lake City. The buyer, Mr. Borst, was in default of his payments at that time. One G. A. Clark was a member of the firm of the Clark-Lavan Motor Company. This company was dealing in automobiles at Price, Utah, and was the agent of the M. L. Graham Company for the sale of the Gray sedan. It appears from the record that there was some written contract existing between the Graham Company and the Clark-Lavan Motor Company respecting this agency. What that contract was does not appear in the record. It does appear, however, that prior to the date of the arrangement by which the Clark-Lavan Motor Company got possession of the car in controversy the Clark-Lavan Motor Company had purchased other cars from the Graham Company for sale as a retail dealer at Price. In the latter part of March or first part of April, 1925, plaintiff purchased the car involved in this litigation from Mr. Clark, of the Clark-Lavan Motor Company, and received a bill of sale from the Clark-Lavan Motor Company.

The plaintiff, Mrs. Harrison, is a widow residing in the town of Castle Gate, in Carbon county. Price is the county seat of Carbon county. A few days before the purchase of this particular car the plaintiff had been at the place of business of the Clark-Lavan Motor Company and had some conversation with reference to the probable purchase of a car, and she and her son had examined some cars then in the garage of the Clark-Lavan Motor Company. She at that time mentioned the kind of car she desired to purchase and also that she wished to give in part payment a car then owned by her. It likewise appears that G. A. Clark, who actually made the sale of the car to plaintiff, disappeared from Price in the early part of April, 1925, and his whereabouts have remained unknown to the parties to this action from that date until the date of trial. Shortly after his disappearance the Clark-Lavan Motor Company ceased to do business, and made no payments to the defendants, or

either of them, for the car sold to plaintiff. The title-retaining note, sold to the Auto Securities Company after the sale to Borst in 1924, was held by that company at the time of the sale of the car to plaintiff. On May 9, 1925, the Auto Securities Company, by letter, notified plaintiff of its purchase on December 4, 1924, of the contract of sale by the Graham Motor Company with Mr. Borst, and also gave the amount remaining unpaid, and advised that it held the title-retaining note, and that it would be its duty, unless the amount was paid, to repossess the car, through its agent or by the sheriff. In response to that letter plaintiff advised the Securities Company that she had purchased the car and paid for the same, and refused to deliver up the car or to pay the remaining amount claimed to be unpaid. Thereafter, on the 14th day of May, the defendant, M. L. Graham, with the written authority of the Securities Company, went to Carbon county and repossessed the Gray sedan against the protest and wish of plaintiff, and, as found by the court, "by fraud and deceit practiced on plaintiff." The testimony at least supports a finding that Graham obtained possession of the car from Mrs. Harrison by deception.

It is undisputed that plaintiff was a purchaser in good faith without knowledge or information that any one save the Clark-Lavan Motor Company had title to this property, and it is likewise undisputed that the Clark-Lavan Motor Company maintained a place for the retail of automobiles at Price, Utah, and also that they were the agents under some arrangement with the M. L. Graham Company for the sale of the Gray car at and prior to the date when this sale was consummated. No attempt is made to dispute any of these facts. It is likewise shown that Mr. Clark, of this company, solicited plaintiff to buy a car from his company, and also solicited her to buy the particular car in controversy. It is also undisputed that plaintiff turned over to Clark, as representative of the Clark-Lavan Motor Company, an automobile then owned by her, of the agreed value of $425, and paid to the Clark-Lavan Motor Company the dif-

ference in value between her car and the one she purchased, namely, $670.

M. L. Graham testified in the case. In his direct examination he related the incidents that resulted in his possession of this particular car at the time Mr. Clark obtained possession of it. He was asked by his counsel this question:

"Now, what, if anything, did you do with the car, Mr. Graham?"

He answered:

"Mr. Clark came in. He had been getting automobiles and paying for them when he took them out by floor plan note, check, or cash. He wanted to get some sedans, and wanted to take them down, because he couldn't hold his prospects unless he could show the car. I told him we had one, and I told him that it wasn't ours, but we were holding it for another party."

The witness was asked this further question:

"Just tell to the court, Mr. Graham, what, if anything, you said to Mr. Clark with respect to this sedan car that you had in your possession, with respect to which he was inquiring, without giving the statements made by Mr. Clark to you."

This was objected to and the objection was overruled. The witness answered:

"In order to make these sales—we had no new sedans on hand, but in order for him to show a car and make these sales, we let him take this car."

At this point the original bill of exceptions shows the following:

"Counsel for Plaintiff: It calls for a conclusion; it is immaterial and irrelevant.

"Counsel for Defense: That may be stricken.

"The Court: The conclusion or reasons advanced by the witness may go out.

"Q. State what you said to him, without giving your conclusions as a basis for it. A. I told him he could take this sedan, which belonged to Mr. Borst, and which was left there to be held by us until he got out of jail; he could take it to Price and get his orders. I told him to bring the car back the next day or the day following; we would have the sedans in then; then he could take two of them down."

The testimony conclusively shows that the Auto Securities Company has not, nor did it have at the date of the trial, any claim to or interest in this car. On cross-examination Mr. Schobert, bookkeeper for the Auto Securities Company, testified as follows:

"Q. According to the ledger sheet there is no balance due the Auto Securities Company, the defendant in this action; is that right? Didn't this last payment of the $159.67 wipe out the entire balance? A. I have to answer that yes or no?

"Q. I will be glad to get your explanation, Mr. Schobert. A. October 8th Mr. Graham paid $159.65. I understood at the time there was a lawsuit on. I made reversion entry on the last two payments and left the balance on the contract.

"Q. As a matter of fact the Auto Securities Company are paid in full? A. Satisfied at that time.

"Q. They haven't returned any money to Mr. Graham, have they? A. No.

"Q. You made that reversion entry for the purpose of using this card? A. For our records.

"Q. You don't now contend there is a balance due on this Gray sedan car; the Auto Securities Company have been paid in full, haven't they? A. Yes."

Moreover, it is fairly reasonably deducible from the testimony respecting the arrangements between the Graham Company and the Securities Company that the Graham Company had authority and was expected to repossess cars upon default of payment and to resell the same, with or without the consent of the Securities Company. It was definitely stated by the above witness that the Securities Company did not deal in cars and did not repossess cars. In the language of that witness, his company was engaged in "financing papers for automobile dealers' notes"; that his company did "its financing by buying contracts and title-retaining notes on automobiles." It did not own automobiles, nor did it sell automobiles, nor did it repossess automobiles, but bought title-retaining notes guaranteed by the dealers, who in turn had sold cars to purchasers.

What are the rights of the parties to this litigation in view of the foregoing facts? It is strenuously insisted on

the part of the appellants that Mr. Clark had no better title to this car than if he had stolen it, and hence could not give any title to a purchaser, however innocent, and regardless of whether value was paid or not. The facts do not warrant this contention. It appears without dispute that Mr. Clark had possession of this car with the consent of the M. L. Graham Company. It also appears from the same testimony that it was taken for the purpose of holding prospective purchasers, and that the car was given into the possession of Mr. Clark, of the Clark-Lavan Motor Company, for the very purpose of soliciting buyers and attempting to hold prospects, which he then apparently had. There is affirmative testimony in the record from one Taylor that in a conversation between Clark and Graham, in the presence of Taylor, Clark said that he had sold a car to a widow woman who resided in Castle Gate. That is the home of plaintiff. This Mr. Taylor came to Salt Lake City with Mr. Clark at the time he obtained possession of this property, for the purpose of driving one of the cars obtained by Clark to Price. True, this testimony given by Taylor was categorically denied by Graham.

Much is said in argument about the rights of parties to conditional sales of personal property or sales made on title-retaining notes given by the purchasers. In our judgment this case is not controlled by the rights of parties under conditional sales or title-retaining notes. In this connection it must be remembered that the Auto Securities Company looked exclusively to the Graham Company for the payment of the paper taken by it from the Graham Company, and, as pointed out, the indebtedness to it had been fully paid by the M. L. Graham Company. It is our view that the Clark-Lavan Motor Company, in making this sale of the Gray sedan to plaintiff, was acting in the capacity of agent for the M. L. Graham Company, and that the rights of the parties should be controlled by the power and authority possessed by the agent, as determined by all the facts and circumstances appearing in the record.

18

It is a general principle of the law of agency, running through all contracts made by agents with third parties, that the principals are bound by the acts of their agents which fall within the apparent scope of the authority of the agents, and that the principals will not be permitted to deny the authority of their agents against innocent third parties, who have dealt with those agents in good faith. That general principle of agency is universally recognized and applied by the courts, and is laid down by every text-writer who has written upon the subject of agency. We have here the Clark-Lavan Motor Company as a retail dealer in automobiles at Price, Utah. The M. L. Graham Company, at Salt Lake City, under some written agreement constituted that company its agent to sell this particular make of car in that vicinity. The Graham Company had sold other cars to the Clark-Lavan Motor Company, prior to the date of the delivery of the car in question to Mr. Clark. The Graham Motor Company gave Mr. Clark the car, as testified to by Mr. Graham, for the purpose of exhibiting it and holding prospective purchasers, or, as stated, of soliciting sales. Mr. Clark used the car for the purpose of exhibiting it and soliciting sales, and actually went further and made a sale, and received pay for the car so sold. I have found no case that, under similar circumstances and facts, holds the principal not bound by the acts of his agent. The principle which should control the rights of the parties in this action is not different from the principle that controlled the court's decision in *Jones* v. *Commercial Investment Trust*, 64 Utah, 151, 228 P. 896.

The trial court was of the opinion that it appears from this record that one of two innocent parties must suffer from the wrongful act of a third person, and that the loss should fall upon the one who by his conduct created the circumstances which enabled the third party to perpetrate the wrong and cause the loss, and determined the case on that principle of law. The rights of the parties, in our judgment, could well be ruled upon this general prin-

ciple of law, and, so ruled, would entitle plaintiff to recover.

Judgment affirmed.

THURMAN, C. J., and CHERRY, STRAUP, and HANSEN, JJ., concur.