**FARRACY v. SECURITY NAT. BANK et al.**

**No. 1191—5194.**

Commission of Appeals of Texas, Section A.

June 25, 1930.

Davis, Synnott & Hatchell and John Davis, all of Dallas, for plaintiffs in error.

Touchstone, Wight, Gormley & Price and Allen Wight, all of Dallas, for defendants in error.

CRITZ, J.

This suit was filed in the district court of Dallas county, Tex., by Harry. D. Farracy, trustee in bankruptcy for the estate of L. H. Lewis Company, a bankrupt private corporation. The purpose of the suit was for the recovery from the Security National Bank of Dallas and the Southwest National Bank of Dallas, as a part of the estate of L. H. Lewis Company, the sum of $43,000, alleged assets of the bankrupt estate in the possession of the two banks. The case was tried in the district court before the court without the inter-

vention of a jury, and resulted in a judgment denying the trustee any recovery against either bank. The trustee appealed to the Court of Civil Appeals for the Fifth District at Dallas, which court reversed the judgment of the trial court as to the Security National Bank and rendered judgment for the trustee and against that bank for $29,000, but affirmed the judgment of the trial court denying the trustee any recovery against the Southwest National Bank. 4 S.W.(2d) 331. Both the trustee and the Security National Bank applied for writs of error to the Supreme Court, and both applications were granted.

For convenience, we will hereafter refer to Harry D. Farracy as the trustee, to the Security National Bank as the Security Bank, and to the Southwest National Bank as the Southwest Bank.

It seems that the L. H. Lewis Company was incorporated in June, 1919, under the laws of Texas, for the purpose of conducting a wholesale dry goods business with a capital stock of $500,000, consisting of 5,000 shares of the par value of $100 each, all subscribed and one-half paid in. L. H. Lewis subscribed for 3,000 shares and paid in one-half, $150,000 in cash, and J. H. Webb subscribed for 500 shares and paid in one-half, $25,000 in cash. Other parties subscribed the balance of the capital stock.

The corporation perfected its organization by electing a board of directors and adopting by-laws. L. H. Lewis was elected president, Cull C. Moorman vice president, and J. H. Webb secretary. Under the by-laws the management of the corporation was placed under a board of directors, etc. The by-laws provided that the president should perform the following duties: "He shall sign all checks, all certificates of stock, conveyances of real estate, and any other instruments in writing requiring a signature, and perform such other duties as may be required of him from time to time by the directors." Also the president was authorized to borrow money when necessary to finance the corporation, and to execute the notes of the corporation therefor.

At the time the company opened for business, all of its capital stock was subscribed and all paid in, but the following circumstances attend the payment of $50,000 of such stock: L. H. Lewis went to Edwin Hobby, the then vice president and cashier of the Security Bank, Hobby also being a stockholder in the L. H. Lewis Company, and, after certain negotiations, Lewis executed his personal note to the Security Bank for $35,000, and Webb his personal note for $15,000. The proceeds of these notes were used to pay the L. H. Lewis Company for $50,000 of its capital stock, being 350 shares for Lewis and 150 shares for Webb. All of this was a part of the stock subscribed for by Lewis and Webb and complete-

ly paid their stock subscription. The above stock was issued to Lewis and Webb in the above proportion, that is, 350 shares to Lewis and 150 shares to Webb. The stock was then deposited with the bank as collateral security for the money borrowed. It seems that Webb deposited some other stock to secure his $15,-000 loan.

The above two notes were renewed from time to time by the respective borrowers, and each paid the interest on his own loan up to May 2, 1921; also prior to that date Webb paid $1,000 on the principal of his $15,000 loan.

On May 2, 1921, on demand of Hobby, Hobby representing the bank, the above two notes of Lewis and Webb were taken up by the L. H. Lewis Company, acting through L. H. Lewis, executing and delivering to the Security Bank the notes of the L. H. Lewis Company for the balance due, $49,000. In other words, the L. H. Lewis Company, without authority from its board of directors, and in plain violation of law, and also in plain violation of the rights of the L. H. Lewis Company, its stockholders and creditors, gave the bank the notes of the L. H. Lewis Company in payment of and to take up the individual indebtednesses of L. H. Lewis and J. H. Webb. The notes of the L. H. Lewis Company were for $9,000, $10,000, $10,000, and $20,000, respectively. The L. H. Lewis Company paid the first three of these notes to the Security Bank. The last note for $20,000 was renewed by the L. H. Lewis Company, and was never paid. It finally became the property of the Southwest Bank when that bank succeeded the Security Bank, taking over practically all, if not all, of its assets, and assuming its liabilities, as will later appear in this opinion.

The Southwest Bank was organized in July, 1921, succeeding to the business of the Security Bank, and took over the major portion, if not all, of the assets of the former bank; also the latter bank expressly by written contract assumed all of the liabilities of the former bank, except its liability to its stockholders.

At the time the Southwest Bank took over the $20,000 note it had been renewed by the L. H. Lewis Company by L. H. Lewis, and, as renewed, was not due. The Southwest National Bank later proved up the $20,000 note as a claim in bankruptcy against the L. H. Lewis estate and received dividends thereon amounting to $14,000 from the trustee. At the time the Southwest Bank took the note from the Security Bank it had no actual notice of the circumstances surrounding the execution of the note as above detailed, and at the time the trustee paid the dividends thereon he was equally innocent. There are many details surrounding the matters involved in this litigation that we have not mentioned. We here refer to and adopt the statement of the Court of Civil Appeals for further statement of the case. We have made sufficient statement to make clear our holding.

As above shown, the Court of Civil Appeals rendered judgment for the trustee against the Security Bank for $29,000, but refused any judgment against the Southwest National Bank.

██ In our opinion, the Court of Civil Appeals should have rendered judgment for the trustee and against both banks for the full amount sued for, $43,000.

The record shows that the Southwest Bank succeeded the Security Bank, taking over practically all, if not all, of its assets, and that the Southwest Bank contracted and agreed in writing to assume all the liabilities of the Security Bank except it liabilities to its stockholders. The liability of the Security Bank for the $29,000 received by it from the L. H. Lewis Company was legal and existing at the time the contract between the two banks was made. This being the case, the contract covered same and obligated the Southwest Bank to pay such liability. It therefore follows that judgment should have been against both banks for the $29,000.

The Court of Civil Appeals holds that no judgment should be entered against the Southwest Bank, and in so holding says: "We do not believe that, under the facts of this case, any judgment should be entered against the Southwest National Bank. It was no party to the wrongful diversion of the $29,000. It is true, under its agreement with the Security National Bank, it took over the assets of such bank and assumed the liabilities. At the time this contract was entered into, there was nothing to put the Southwest National Bank on notice that the note executed by the L. H. Lewis Company to the Security National Bank was other than what it purported to be—evidence of a legal debt owing by the Lewis Company to the Security National Bank, and, therefore, an asset of such bank, and was accepted by the Southwest National Bank as such. In other words, such latter bank was a bona fide holder of this $20,000 note for value. The very section of the Bankrupt Act which gives appellant a cause of action against the Security National Bank decrees that such transfer of property shall not be avoided when it is held by a bona fide holder for value prior to the date of adjudication. We are therefore of the opinion that the trial court correctly rendered judgment in favor of the Southwest National Bank, and that this case should be affirmed as to such appellee."

We cannot agree with the above holding. It is true that the $20,000 note was indorsed by the Security Bank to the Southwest Bank before maturity, and that the latter bank had no notice of the transactions attendant on its

being held by the Security Bank as a part of its assets, but, at the same time the note was transferred from the Security Bank to the Southwest Bank, the written contract above mentioned was made, and we think, that, under such facts, the written contract and the indorsement of the note are all one contract. In other words, when the Southwest Bank took over the assets of the Security Bank under the written contract to assume its liabilities, it could not stand in the position of an innocent holder of the $20,000 note, when the very contract by which it held the note obligated it to discharge any liability of the Security Bank in reference thereto. Such a holding nullifies the terms and effect of the written contract.

We further are of the opinion that, even if it should be held that the Southwest Bank is an innocent holder of the note, still the Security Bank having illegally and wrongfully demanded and accepted the $20,000 note of the L. H. Lewis Company for the individual debts of Lewis and Webb, and having transferred same to the Southwest Bank, would be liable to the L. H. Lewis Company and its trustees for any money such company or its trustees has to pay out thereon, and, if the Security Bank is thus liable, the Southwest Bank would also be liable on its contract of assumption above referred to.

We therefore recommend that the judgments of the district court and the Court of Civil Appeals be both reversed and judgment here rendered for the trustee in bankruptcy against both the Security National Bank and the Southwest National Bank for $43,000.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals reversed, and judgment rendered for the trustee against both banks, as recommended by the Commission of Appeals.