# SKERL v. WILLOW CREEK COAL CO.

No. 5756.   Decided June 18, 1937.   (69 P. [2d] 502.)

*Chris Mathison,* of Salt Lake City, and *B. W. Dalton,* of Los Angeles, Cal., for appellant.

*Marl D. Gibson,* of Price, for respondent.

MOFFAT, Justice.

Martina Skerl was a minor at the time this action was brought. By the time the case was at issue and tried, she had reached her majority and was substituted for her guardian ad litem, John Skerl, her father. After alleging the corporate existence of the defendant, plaintiff avers that on March 20, 1933, she was with four others, boys and girls, invited by the defendant company to visit the mine known as the "Willow Creek Mine" belonging to and operated by the defendant; that, pursuant to the invitation, plaintiff and the others visited the mine at about the hour of 9 o'clock in the evening of said day; that plaintiff did visit said mine and the underground workings, describing the general character of the mine; that the roof was low, and in moving about persons were compelled either to crawl or walk in crouched positions; that the mine was dark and the miners and her guide were using open carbide lighted lamps; that defendant's agent who was showing plaintiff about the mine as a guide had attached to the front of his cap one of such lighted carbide open lamps; that her guide in showing her about the mine led her to one of the crosscuts at which place there were stored two cans of powder of a capacity of about 20 pounds each, one of which was open and contained about 15 pounds of powder; that the gun powder became ignited in some way unknown to plaintiff by the carbide lamp and an explosion resulted, killing plaintiff's guide and causing plaintiff severe wounds, disfiguring her face, hands, arms, neck, and other parts of her body, resulting also in the loss of the free use of the joints of her fingers, hands, and arms, and producing permanent disfigurement.

The defendant admitted its corporate existence, the presence of plaintiff and others in the mine at the time alleged, the character of the mine, that workmen were at work therein, and the use of carbide lamps. It denies that plaintiff was in the mine or upon defendant's property upon the invitation of defendant or upon or by invitation of any person authorized to act upon behalf of defendant; denies the storage of more than one can of powder in the mine; and admits that an open can of powder contained about six pounds of powder, and that such powder was used by workmen in the mine.

Defendant alleges as an affirmative defense that plaintif Martina Skerl and the other parties with her, if they entered the mine, entered it after being advised and warned not to so enter, and alleges, if they did so, it was done at plaintiff's own risk and that, if she were shown about the mine, the person or persons showing her and others about was or were trespassers on the property of defendant. Defendant also admits that the powder became ignited, and as a result there was flame and admits that "one of the parties with the plaintiff was killed" and that plaintiff suffered severe and painful wounds. Otherwise, plaintiff's allegations are denied.

The action was tried by the district court of the Seventh judicial district of Utah in and for Carbon county, sitting with a jury. The jury returned a verdict for plaintiff. Judgment was entered thereon and defendant appeals, assigning errors, all of which go to three propositions. The first relates to the question as to whether or not the plaintiff was invited or permitted to visit the mine of defendant and, if so, whether the person or persons who invited her or permitted such visit were agents having authority or apparent authority to invite or permit the plaintiff to enter defendant's mine; second, the question of keeping or storing powder in the mine; and, third, matters relating to instructions given, and the refusal of the court to give instructions requested by defendant.

Appellant's statement as to the questions involved is as follows:

"The appellant contends that the plaintiff was not an invitee in the defendant's mine, but at most a licensee; and that whether the plaintiff was an invitee or a licensee, or even a trespasser, the court not only failed to instruct the jury upon the law applicable to the case, but misdirected them."

The evidence discloses that plaintiff and a number of her friends live at Spring Glen in Carbon county, Utah; that Glen Jackson had charge of the cutting and removal of the coal from the mine of the Willow Creek Coal Company near Spring Glen for at least one of the shifts of operation, and apparently was in charge of inside operations during the period he was on duty; that John I. Howard was president, and during his period of duty had charge and direction of outside operations. The first intimation relating to a trip to the mine that resulted so disastrously to a group of young people from Spring Glen, among whom was plaintiff, arose out of a conversation between Antone Dupin and Glen Jackson. This conversation took place at the automobile repair shop of Antone Dupin at Spring Glen on March 20, 1933. Louis Kosec, an operator of the mine hoist, and his brother, who had for a short time also been employed in the mine, were present.

At that time and place Glen Jackson said, "Why don't you get up a party with some of your friends and go up and visit the mine?" Later that day, Antone Dupin, Martina Skerl (plaintiff herein), Annie Skerl, Antonia Skrinner and Joe Kosec (deceased) went up to the mine. The party went from Spring Glen to the mine in Antone Dupin's automobile. When they arrived near the mine, they parked the car and walked up to the "shack" or office. This was done in pursuance of Jackson's statement or invitation. When the party got up to the office, John Howard came out. Dupin told Howard the party had come up to visit the mine and that Jackson had asked them to come up. Dupin testified that Howard "kind of hawed about it, and said that Carlson who was Superintendent would just as soon not have people go in the mine, but did not give a definite answer." While

the party was there, Glen Jackson came out of the mine and Dupin said, "What about it, Jackson?" That Jackson said, "Sure, hell's sake go ahead." The party then proceeded and, after signaling the hoistman, were pulled in a car about 500 feet into the mine.

Louis Kosec, employed by defendant as hoistman, was a brother of Joe Kosec, who was killed. He testified that Glen Jackson was the man who hired him to work for the company and was the man who gave most of the orders as to the running of the inside of the mine; that he was present at the conversation about going up to the mine; that he told Dupin he was working that night and to get a party together and visit the mine; that he expected the party up that night; that Glen Jackson had just finished his work of cutting and shooting the coal and came to the hoist to ride out; that he told Jackson the group was outside ready to come up and suggested to him that when he got outside to make sure that they came in; that he said he would; that he pulled the group into the hoist, which it appears was located in the mine about 500 feet from the portal; that during the time he had worked there he had seen other persons in the mine who were not working there; that about a month before he had taken two of his sisters and his fiance into the mine; that at that time he saw Mr. Carlson at the shack and told him he was going to help his brother cut coal and was taking the visitors into the mine; that Carlson made no objection; that at other times he had taken visitors and had seen others taken or permitted in the mine.

Martina Skerl, the plaintiff, testified that she was one of the party that went with Antone Dupin in his car to the mine on March 20, 1933. She named the group and testified that when they arrived at the mine they were taken in a coal car some distance into the mine to the hoist and where the men were working; that Joe Kosec told her that he had worked in the mine before and was going to take her down to show her where he had worked. She, following Joe, left the hoist and had gone a short distance when there

was a loud puff, not like a bang, and flames were all around them. Plaintiff was burned and disfigured. The nature and extent of her injuries are not questioned.

Rudy Kosec testified that he was working in the mine that day; that at the place the explosion took place there was a half can of powder in an open can and two full ones by the side of it that had not been opened; that a full can contained twenty-five pounds; that there was powder scattered around where the powder was stored caused by the spilling of some powder as it was poured from a can into the cartridges as they were made up for the charges; that he went out of the mine that night with Glen Jackson and met the group of young people by the scale house as they were going into the mine. There was evidence that other persons had at different times visited the mine in the company of other employees.

Mr. Howard, who was at the scale house or office when the group presented themselves for admission to the mine, was the president of the company. As he left the party, he was advised of the request of the party and was in position to know what Jackson had said. Carlson, the manager and superintendent, does not appear to have been present or have been advised of the presence or purpose of the party. Other officers, agents, or employees were present and in charge of the premises.

The defendant produced evidence conflicting in many particulars with that of plaintiff. This is a jury case. The jury was the sole judge of the credibility of the witnesses and the weight of the evidence. The jurors were at liberty, if they were so impressed, to believe the witnesses for plaintiff. We have, therefore, stated only such of the evidence as bears upon the question as to whether or not there was sufficient evidence to support their verdict. If they believed the evidence, the substance of which has been summarized, there was sufficient evidence with the legitimate inferences that may be drawn therefrom to support a finding that plaintiff occupied the position of one invited

or permitted by persons having apparent authority to permit her to visit the premises.

The matter went to the jury upon the broad allegation that the plaintiff and others were invited by defendant company to visit the mine and that in pursuance of such invitation the party visited the mine. No person, officer, or agent is named who issued the alleged invitation. By answer, the defendant denies that plaintiff and others were invited "by defendant or any person acting for or on behalf of defendant" to enter the mine, but does not allege any limitation as to person or rule as to persons entering the premises. Defendant alleges, without saying who gave the warning, that plaintiff and those who were with her were warned not to enter the premises. Thus, the general questions as to whether or not the plaintiff or those constituting the party were invited, also the position or status of the party who might have issued the invitation, are left to the general statements indicated. These questions were therefore set at large before the jury, and the jury were at liberty to consider the evidence presented as it might bear directly or indirectly upon those issues. Where a general verdict is returned and different issues are involved, and it is not disclosed upon what issue the verdict was based, the reviewing court has no means of searching out those issues. *Berchtold* v. *Martin,* 38 Ohio App. 556, 177 N. E. 57.

That there were persons present and in charge of the premises of defendant and with claimed authority to exclude persons from the premists is asserted, and evidence to that effect presented by defendant. Antone Dupin and others were invited by Jackson, whether by virtue of any authority or not, to visit the mine. Leaving out of consideration any legal effect that might be attached to the conversation at the garage with Dupin and others, Glen Jackson occupied a position of supervision and power greater than an ordinary employee, accepting the testimony of either side of the case. Louis Kosec testified that Glen Jackson was the man who hired him and gave him orders as

to what he was to do in the mine. He was the man who gave most of the orders as to the running of the inside of the mine.

Both parties to this cause have been dilligent in searching out and in excellent form have furnished many authorities upon the questions argued. Whether or not a person upon the property of another is an invitee, a licensee, or a permittee, or a trespasser, is a question of ultimate fact, depending upon the circumstances and proof. An invitee is a person who receives an invitation from another. So with a permittee, and either may be express or implied. The general situation was submitted to the jury. That Antone Dupin received an express invitation from Glen Jackson to make up a party and visit the mine, there is evidence to support. The jury had the evidence from which, nothing to the contrary appearing, they might reasonably infer that he had such authority. As to the whole party being permitted to enter the mine regardless of Jackson's invitation at the garage, taking into consideration the situation when the party presented themselves and the conversations at the office or shack, the evidence was sufficient that the jury might properly find that the party was permitted to enter the mine by those who were exercising apparent authority over the property and that plaintiff might reasonably rely upon such apparent authority. Both Jackson and Howard were present, one as was shown was in charge of the inner operations of the mine and the other in charge of the surface operations, both in such position of apparent authority that one desiring to go upon the company property might reasonably rely upon the permission given by them or either of them.

"It is a general principle of the law of agency, running through all contracts made by agents with third parties, that the principals are bound by the acts of their agents which fall within the apparent scope of the authority of the agents, and that the principals will not be permitted to deny the authority of their agents against innocent third parties, who have dealt with those agents in good faith. That general principle of agency is universally recognized and applied by the courts, and is laid down by every text-writer who has written upon the sub-

ject of agency." *Harrison* v. *Auto Securities Co.*, 70 Utah 11, 257 P. 677, 679, 57 A. L. R. 388.

It is likewise true that whether plaintiff was injured at a place where she would reasonably or ordinarily be expected to go is one of fact for the jury. *St. Louis & S. F. R. Co.* v. *Stacy*, 77 Okl. 165, 171 P. 870.

Section 55-2-8, R. S. Utah 1933, among other matters, provides:

> "The following general rules shall be observed by every owner, operator, superintendent, mine foreman and employee of a coal or hydrocarbon mine: * * *
>
> "(10) Gunpowder or any other explosive shall not be stored in a mine, and a workman shall not have at any time in any place more than six and one-quarter pounds of powder; provided, that under special conditions a larger amount may be allowed in a mine for immediate use, when approval of such action is made in writing by the industrial commission.
>
> "(11) Every person who has gunpowder or other explosive in a mine shall keep it in a wooden or metallic box securely locked, and such box shall be kept at least 10 feet from the tracks in all cases where room at such distance is available."

The evidence is such that the jury could properly find that defendant or the officers and employees violated the provisions of the statute above quoted by having more than the specified amount of powder in the mine. The trial court instructed the jury that the defendant would be guilty of negligence if it kept or stored gunpowder in its mine in violation of law, but that such negligence alone would not be sufficient unless the keeping and storing of gunpowder was the proximate cause of the injury complained of. The instruction was favorable to defendant. In fact, it is, with the exception of the words "injury complained of" in lieu of "ignition or explosion of the gunpowder" and an omitted but immaterial part, identical with defendant's request. A pertinent and rather complete discussion of the point here involved is found in *Smith* v. *Mine & Smelter Supply Co.*, 32 Utah 21, 88 P. 683. Quoting the latter

case, this court said in *White* v. *Shipley*, 48 Utah 496, 160 P. 441, 444:

" 'When a standard of duty or care is fixed by law or ordinance, and such law or ordinance has reference to the safety of life, limb, or property, then, as a matter of necessity, a violation of such law or ordinance constitutes negligence.' "

Appellant contends that the court erred in refusing to give the whole of defendant's requested instructions Nos. 1 and 2 and in giving instructions Nos. 14 and 15. Without quoting the requested instructions, it is sufficient to say that the court gave all that was contained in the requests which defendant was entitled to have given, ▮ both of which were covered by instruction No. 13, which in our opinion was more favorable to defendant than defendant was entitled to and went further than the law warrants.

Instructions Nos. 14 and 15 read as follows:

"14. You are instructed if you find that the plaintiff in this case was an invitee on the premises in question, then the defendant owed to her the duty of exercising such reasonable care as the time, place and circumstances in this case would justify to protect her from being injured by dangers unknown to her, and which the exercise of reasonable diligence on her part would not have disclosed."

"15. You are instructed that the owner of premises owes to invitees thereon the duty of keeping the premises in a reasonably safe and suitable condition so that those whom he has invited to enter upon or use his property shall not be unnecessarily exposed to danger, and he is liable for injuries received by invitee as a result of a dangerous condition of the premises."

The case was tried by plaintiff on the theory that she had been invited to visit the mine. Defendant's answer charged that she was a trespasser. No instruction was requested upon the question as to plaintiff being a trespasser. Under the instructions, a verdict for plaintiff indicates that the jury could not have found other than the plaintiff was an invitee or permittee, which of necessity negatives the position of her being a trespasser. The main point for the jury

to determine was whether the plaintiff was an invitee. The jury were instructed that, if plaintiff was not an invited person, she was not entitled to recover. It would have tended to confuse the issues and the jury to have added instructions as to licensees and trespassers.

Appellant contends that the instruction given as to an invitee was not sufficiently complete because it did not contain information as to licensees and trespassers. Appellant is not in a position to complain. No instructions were requested by defendant on those details. If more particularity was desired by defendant, requests should have been submitted. It is apparent defendant accepted plaintiff's theory of invitee, it being the issue more difficult to establish. The charge to the jury must be considered as a whole. *McAfee* v. *Ogden Union Ry. & Depot Co.*, 62 Utah 115, at page 128, 218 P. 98; *Salt Lake & Utah R. Co.* v. *Schramm*, 56 Utah 53, 189 P. 90. In the latter case what is now section 104-24-15, R. S. 1933, was construed and applied.

A careful study of the court's charge to the jury reveals no reversible error therein. The record discloses the case was fairly tried and the issues fairly submitted to the jury. The judgment of the lower court is affirmed, respondent to recover costs.

FOLLAND, C. J., and HANSON and LARSON, JJ., concur.

WOLFE, Justice (concurring).

I concur on the ground that under the evidence the jury were warranted in finding from the evidence that the party which entered the mine had at least implied permission to enter. The failure of Howard (who certainly as president and in active charge of surface operation had ostensible authority to permit or refuse them admission) to forbid them to enter and Jackson's positive permission to go in certainly would be sufficient to take the party out of the category, if any, of those who could not take advantage of the com-

pany's negligence in keeping powder in the mine in violation of the law. Certainly, such provision of the law was intended at least to protect any one lawfully in the mine. And the party was lawfully in the mine if Jackson had real or apparent authority to admit them.

Apparent authority must be "apparent"; that is, the act in question which is done by the agent must be such an one which would seem to be within the purview of his actual authority. Thus, a broker engaged to negotiate a loan and obtain money for a client ostensibly has authority to receive the money on delivery to the lender of the papers, even though his client has not in fact authorized it. *Wilcox* v. *Cloward*, 88 Utah 503, 56 P. (2d) 1. But a person charged with the collection of rents has not ostensible or apparent authority to list a property for sale, because putting up for sale a client's property is not naturally or normally or apparently within the scope of the work of a rent collector. In other words, the work which the agent is really authorized to do must be such that the act which he does and in regard to which his authority is in question is usual or incidental or of the same nature or reasonably connected with that work or authority which he actually has or he cannot be apparently authorized. Otherwise, the fact that one dealing with another whom he knew was an agent would give that agent apparent authority to do everything an agent might do.

I doubt whether Jackson, who had charge of entering and removing the coal, had apparent authority to invite people up to the mine while off the premises. When they were on the premises and asked whether they could go in, he, being in charge of inside operations and they knowing that and their request being to go inside, might assume that he had the authority to permit them to enter. Such permission at such time was within his apparent authority. But his previous invitation was material at least to show the occasion for their coming and to show that they knew what Jackson's job consisted of so that they might presume his authority .

to admit them. Had they, however, on their own initiative arrived and made inquiries and Howard and Jackson said what they did, and it being shown that they knew what positions those men occupied or the circumstances were such that they could reasonably presume that they had authority to admit them, I think the jury would have been justified in coming to the conclusion that they were permitted to enter the mine. Certainly, the ordinance is for the protection of such.