357 P.2d 483

**Lincoln C. WHITE, Plaintiff and Respondent.**

**v.**

**WESTERN EMPIRE LIFE INSURANCE COMPANY, a corporation, and A. A. Timpson, Defendants and Appellants.**

**No. 9156.**

Supreme Court of Utah.

Dec. 2, 1960.

---

2.  9 Am.Jur. 388, et seq.

228

Cotro-Manes & Cotro-Manes, Horace J. Knowlton, Salt Lake City, for appellants.

White, Arnovitz & Smith, Salt Lake City, for respondent.

HENRIOD, Justice.

Appeal from a judgment for plaintiff in a case tried to the court, for breach of a promise to resell defendant's stock theretofore sold by defendant's president to plaintiff. Affirmed with costs to plaintiff.

Negotiations between plaintiff and one Timpson, president of defendant company, culminated in the following letter dated January 3, on defendant's stationery, addressed to plaintiff:

"This is to certify that any stock that you buy from Western Empire Life Insurance Co. at $60 per share will be sold for you after April 1, 1958, for $120 per share less salesman's commission at the going rate. Sincerely, A. A. Timpson, President."

Plaintiff thereupon acquired 60 shares of the defendant's stock.

Timpson had no express authority to resell stock that he may have sold, although he did have express Board of Directors' authority to make the original sale. Defendant urges that the trial court erred in finding 1) that Timpson had authority to bind the company to the alleged contract, 2) that plaintiff received no copy of the prospectus, 3) that the contract was not void as a matter of law, and 4) that plaintiff bought 60, rather than 40 shares.

Canvassing the points on appeal in reverse, there appears to have been sufficient credible evidence in the record to conclude that plaintiff agreed to and did buy 60 shares; that the contract was not void as a matter of law, since, assuming that the contract could be interpreted as one to purchase the corporation's own stock, the court found, on substantial evidence, that it would not impair the assets acquired as consideration for sale of shares,[1] in which event repurchases are exempt from the interdiction against corporate purchase of its own shares;[2] and that plaintiff, who testified that he had not received a prospectus, if believed, justified a finding that he had not seen any prospectus.

Timpson's authority to bind the corporation to a sale of the stock is conceded. Only question is whether he had implied or ostensible authority to bind the corporation to a promise for the resale of the stock if plaintiff requested it after a three-month period. It is significant that the minutes of the Board, January 3, the same day the letter was written, stated:

"A motion was made * * * that the $60 issue * * * now be withdrawn * * * as of Jan. 6, and that Mr. Timpson seek * * * approval to sell another issue * * * at $120. The motion * * * carried unanimously."

This could indicate that the offering price was to be upped to $120, the identical figure Timpson had committed the company to resell plaintiff's shares for three months later. If all this were accomplished, there would be no loss to the company.

It is conceded that if personal property other than stock had been involved, the authorities cited by defendant anent the principal-agent relation would be pertinent. However, sale of securities seems to have been treated differently under those principles. The annotation at 34 A.L.R.2d 515, et seq. points up the majority view that under facts such as we have here, the corporation must accept responsibility for the agreement to resell the securities, on the basis of a binding ostensible authority vested in Timpson.[3] Reference to that annotation is made with approval, and it is unnecessary to repeat its language in this decision.

WADE, J., concurs.

CROCKETT, Chief Justice (concurring).

I concur, but desire to add these comments: The rules of law applicable to the

---

1. The company had a $50,000 surplus.
2. Title 16-2-16(f), Utah Code Annotated 1953.

3. The authorities cited by defendant are concerned principally with the sale of types of personal property other than securities.

authority of an agent to bind his principal in the sale of securities should be the same as those applicable to the sales of other personal property. I do not disagree with the text at 34 A.L.R.2d 514: "Although the rules of agency applicable to the sales of either type [stocks, bonds and securities as compared with other personal property] are identical it is interesting to note that the results reached by the courts in litigation concerning sales of securities differ significantly from results reached when the matter at issue relates to sales of other personal property." The difference in result may be due to the vagaries of courts, but I do not think there is any justification for differentiating the principles involved.

The correctness of the basic rule that in selling stock an agent can bind his company only within the scope of the authority conferred upon him is not to be doubted. But that can be either the actual authority conferred, or that which is apparent to the purchaser and upon which he reasonably relies. If the circumstances are such that it appears that the company has invested the agent with the authority in question, and the purchaser reasonably relies thereon, the company is responsible for his conduct.[1]

In considering whether the plaintiff could reasonably rely on the authority of the agent to make the agreement in question here, in candor it must be conceded that undertaking to resell the stock and double the plaintiff's money in three months' time is something which a purchaser should normally look upon with skepticism. I am quite in accord with the authorities relied upon by defendant that in a situation involving an ordinary sales agent, he could not bind the company to such a contract. But it seems to me that the fact situation here is sufficiently different to distinguish this case from those cited.

It is first to be observed that in the event of a dispute as to whether the facts fall within the postulates above stated, except in cases where the evidence is so clear as to admit of no finding to the contrary, the question as to whether the agent had ostensible authority to enter into the transaction which was reasonably relied upon by the purchaser, is one of fact to be determined by the court or jury. I think that was the situation here, and that the evidence justified the conclusion arrived at by the trial court.

A fact of salient importance is that this transaction was carried on by the president and functioning head of the defendant company. It must be assumed that there were reasons which persuaded him that it would be to the advantage of the company to enter into such a contract to get the support of Mr. White and his money in the formative stages of this business. The trial court be-

1. Skerl v. Willow Creek Coal Co., 92 Utah 474, 69 P.2d 502.

lieved from the evidence that the action of the president in making this agreement was within the scope of his apparent authority. It recited in its finding No. 6 that:

"The President shall exercise the general supervision and direction of the affairs of the company."

and made the further finding that,

"The agreement made by the defendant corporation with the plaintiff was within the scope of the apparent and implied authority of the defendant A. A. Timpson as president of the defendant corporation."

The plaintiff having, prevailed, is entitled to have us survey the evidence in the light most favorable to the finding of the trial court,[2] and in doing so, unless it is such as to compel us to say that there is no substantial basis therein upon which it could make the above finding, neither it nor the judgment it supports can properly be disturbed.[3]

In considering whether the judgment of the trial court should be overturned, these further observations are pertinent. Depending on how the question of Mr. Timpson's authority to bind the company is resolved, either Mr. White will lose the advantage of the bargain he was persuaded to enter into; or the company will lose by having to abide by what it now contends is a bad bargain made on its behalf. Despite the apparent harshness of the bargain from the company's point of view, there are reasons which the trial court could, and undoubtedly did, consider that it would be more just and equitable for the company to bear the loss, than for the plaintiff to do so. First, it was the company which chose Mr. Timpson as its president and reposed confidence in his integrity. Second, the company took Mr. White's money and accepted the benefits of the bargain by using it until the time for it to perform arrived. Under such circumstances it seems more fair and equitable that the company be held responsible for the acts of its agent and bear the loss involved than to visit loss upon a third party who appears to have dealt with the company's president in good faith.[4]

Furthermore, if the company could reject such an obligation, as was attempted here, its president could enter into such a contract; the company could enjoy its benefits, then when it came time to live up to its bargain, deny the obligation on the ground that the president had been given no such authority.

For the foregoing reasons, and upon the basis of the facts as found by the trial

2. See Morris v. Russell, 120 Utah 545, 236 P.2d 451, 26 A.L.R.2d 947.
3. Johnson Real Estate Co. v. Nielson, 10 Utah 2d 380, 381, 353 P.2d 918.
4. Cf. Harrison v. Auto Securities Co., 70 Utah 11, 257 P. 677, 57 A.L.R. 388.

·court, I agree in affirming the judgment. However, I deem it of importance to add that a contract of this character might lend itself to being used as a usurious transaction, but no contention in that regard was presented in this case.

CALLISTER, Justice (dissenting).

I dissent. I am in accord with the statement in the main opinion to the effect that the majority view is that an agent engaged in the selling of securities may, under some circumstances, have the implied authority to bind his principal to a repurchase or resell agreement.

However, in the instant case the agreement is to resell the stock for *twice* its purchase price within a *three-month* period! This is certainly not an ordinary or usual resell agreement. It seems to me that any person offered such an unusual proposition would be put on notice as to the agent's authority to bind his principal and should make inquiry concerning the same. Such an agreement would have to be expressly authorized by the board of directors.

If Timpson had the implied authority to enter into such a resell agreement, he would have the power to subject the corporation to a liability, the sudden maturing of which might easily absorb all of its capital.

McDONOUGH, J., concurs in the dissenting opinion of CALLISTER, J.