Bernard **WHITTEN, Trustee, Petitioner,**

v.

**REPUBLIC NATIONAL BANK OF
DALLAS, Respondent.**

No. A–10475.

Supreme Court of Texas.

Nov. 10, 1965.

Rehearing Denied Jan. 19, 1966.

Wynne, Jaffe & Tinsley, Carl W. Wilson, Dallas, for petitioner.

Leachman, Gardere, Akin, Porter & De-Hay, Dallas, for respondent.

CALVERT, Chief Justice.

Petitioner Whitten, Trustee in Bankruptcy of Tex-Mex Corporation, seeks to recover the sum of $65,270.83 from respondent, Republic National Bank of Dallas. Right of recovery is predicated on allegations that Bank required Tex-Mex, prior to its bankruptcy, to pay a personal

note of its president out of the proceeds of a $257,500.00 loan made by Bank to Tex-Mex. The underlying theory of Whitten's suit is that use of corporate funds to pay a debt of a corporate officer is prohibited by Article 1349, Vernon's Texas Civil Statutes, and by Article 2.02, subd. A(6), Texas Business Corporation Act, V.A.T.S.; and that although Bank knew or was charged in law with knowledge of the statutory prohibition, it required that payment of the debt of Tex-Mex's president be made from corporate funds and thus diverted such funds.

Both parties moved for summary judgment. Bank's motion was overruled, but Whitten's motion was granted and judgment was rendered against Bank for $65,270.83. The Court of Civil Appeals reversed the trial court's judgment, granted Bank's motion for summary judgment, and rendered judgment that Whitten take nothing. 383 S.W.2d 207. We affirm the judgment of the Court of Civil Appeals.

Bank had before the Court of Civil Appeals five points of error designated "arguments" and stated as follows:

"*Argument (a)* The Trustee has no cause of action against the Bank under Article 2.04, Texas Business Corporation Act.

"*Argument (b)* TexMex as a matter of law ratified the transaction with the Bank upon which this suit is based.

"*Argument (c)* The Trustee is estopped as a matter of law to recover against the Bank.

"*Argument (d)* The Trustee may not disaffirm that part of the agreement with the Bank which he considers onerous to TexMex and affirm and retain the benefits of the beneficial part.

"*Argument (e)* TexMex sustained no damages in the transaction with the Bank."

The Court of Civil Appeals considered separately and sustained the first four points, but did not consider the fifth point.

The briefs of the parties filed in this Court are devoted primarily to the first point which concerns a proper interpretation of Art. 2.04, T.B.C.A., and its application to the facts of this case. Whitten contends that his suit is not precluded by that statute which abolishes "lack of capacity" of a corporation as the basis of a claim or defense at law or in equity. Bank asserts that it is. To a somewhat lesser extent the parties argue the point on ratification, Whitten contending that ratification of the transaction out of which the claim grows could only be effected by unanimous consent of all shareholders of Tex-Mex and Bank arguing that the Board of Directors could ratify on behalf of the corporation. Perhaps it would be of academic interest for this Court to resolve those issues; but, having concluded that Whitten is estopped as a matter of law from asserting his claim, resolution of the issues is unnecessary and would serve no useful purpose in this case. For, even if the claim is not precluded by Art. 2.04, T.B.C.A., and the transaction has not been legally ratified, as Whitten contends, he is still estopped from asserting the claim.

The facts in the case are reflected in summary judgment affidavits and are set out in the opinion of the Court of Civil Appeals in considerable detail. Only those which bear on the issue of estoppel will be related here.

In 1959 Tex-Mex was indebted to Bank in the sum of $329,187.50, and its wholly owned subsidiary, People's Realty Company, was indebted to Bank on a note in the sum of $97,500.00. Robert A. Yarber, President of Tex-Mex, owed Bank $65,-000.00, plus interest, on a personal note. Yarber's note was secured by 37,500 shares of common stock of Tex-Mex and by a letter agreement of Tex-Mex, signed by Yarber and by Robert M. Cozine as Executive Vice-President, to purchase the 37,500 shares of stock at $2.00 per share if called on to do so during the term of the loan. Tex-Mex sought to borrow an additional $257,500.00 from Bank and, after informal

discussions between officers of the two institutions, its Board of Directors on November 24, 1959, authorized the execution of its note to Bank for that sum, the note to be secured by two second lien notes for $600,000 and $80,000 respectively. Bank refused to make the loan unless Yarber's note was paid out of the proceeds. On November 27, 1959, Bank agreed to make and did make the loan upon condition that out of the proceeds of the loan the balance of $65,270.83 on Yarber's note, the balance of $97,955.00 on the note of People's Realty Corporation, and claims of various other creditors totalling $73,800.00 would be paid. There were other terms of the agreement. As a part of the same transaction, Bank was to mark Yarber's note "Paid" and surrender the note, the 37,500 shares of Tex-Mex stock and the agreement to purchase the same to Tex-Mex. In turn, Yarber was to execute his note to Tex-Mex for $65,270.83 and assign his 37,500 shares of stock to Tex-Mex as collateral. Tex-Mex was to assign to Bank the $600,000 and $80,000 second lien notes and Yarber's note for $65,270.83 as security for its note for $257,500.00. The agreement was fully consummated and executed on the terms and conditions indicated. Certain payments were thereafter made on the note for $257,500.00, and in October, 1960, the note was sold by Bank to one Atkerson to whom it and its collateral security were assigned. A petition in bankruptcy was filed against Tex-Mex December 23, 1960, and Whitten was appointed Trustee March 21, 1961.

On the basis of the foregoing facts, Bank contends that Whitten is estopped to assert that payment of Yarber's note by Tex-Mex out of corporate funds was *ultra vires* and to assert a claim for recovery of the sum so paid. The contention of Bank was sustained by the Court of Civil Appeals, as heretofore indicated. That court pointed out that Whitten did not allege any fraud on the part of Bank, and that Tex-Mex unquestionably received benefits from the fully executed agreement of November 27, 1959. Assuming those facts to be true, and that payment of the Yarber note was *ultra vires* only in the sense that it was beyond the powers conferred on Tex-Mex by its charter and the statutes under which it was incorporated, the holding of the Court of Civil Appeals is undoubtedly sound. See Kincheloe Irr. Co. v. Hahn Bros. & Co., 105 Tex. 231, 146 S.W. 1187 (1912); Bond v. Terrell Cotton & Woolen Mfg. Co., 82 Tex. 309, 18 S.W. 691 (1891); Hildebrand Texas Corporations, §§ 135, 137; 19 Am.Jur.2d, Corporations, §§ 973, 974, 975. But Whitten argues that Tex-Mex did not receive benefits adequate in law to predicate an estoppel.

The benefits said by the Court of Civil Appeals to have been received by Tex-Mex are (1) payment of the $97,955.00 note of People's Realty Corporation, Tex-Mex's subsidiary; (2) execution by Yarber to Tex-Mex of his note for $65,270.83, secured by his 37,500 shares of stock; (3) release of Tex-Mex's obligation to buy Yarber's stock at $2.00 per share; (4) the receipt of $73,800.00 with which to pay claims of other creditors; and (5) receipt of approximately $21,000.00 in free funds in its account.[1] If we assume, as Whitten contends, that the first three listed items were of no real benefit to Tex-Mex, the fact remains, as pointed out by the Court of Civil Appeals, that from the funds made available Tex-Mex was able to refinance claims of other creditors in the amount of $73,800.00 and to obtain $21,000.00 for such other purposes as it cared to use it. We hold that these benefits were direct and substantial and that they are sufficient in law to estop Tex-Mex, as a matter of law, from asserting that payment of Yarber's note was *ultra vires*, and from asserting a claim for the money so paid.

As compelling a different conclusion, Whitten cites Dunagan v. Bushey, 152 Tex.

1. The summary judgment affidavit supporting "Bank's motion states the latter figure as $21,200.00." Arithmetical computation indicates that it should be $20,474.17. The difference is immaterial.

630, 263 S.W.2d 148 (1953); Farracy v. Security National Bank, Tex.Civ.App., 4 S.W.2d 331, judgment modified, Tex.Com. App., 29 S.W.2d 1073 (1930); and First Merchants Nat. Bank & Trust Co. of Lafayette v. Murdock R. Co., 111 Ind.App. 226, 39 N.E.2d 507 (1942). We do not regard these cases as controlling or persuasive on the issue of estoppel. In both Dunagan v. Bushey and Farracy v. Security National Bank, a bank was held liable for the return of corporate funds used to pay personal debts of officers and directors, but in neither case did the corporations benefit from the transaction in which the debts were paid nor was an issue of estoppel involved. The Indiana decision is by an intermediate appellate court. In that case Murdock Realty Company executed a mortgage on real property to secure a corporate debt and to secure personal debts of its officers. Foreclosure of the mortgage lien was decreed to satisfy the corporate debt but foreclosure was denied in so far as the lien was given to secure the debts of officers. This in spite of the fact that in the transaction in which the security was given the bank had advanced an additional $18,000.00 to the corporation. Evidently estoppel was not an issue in the case as it is not discussed in the court's opinion. The court concluded its opinion thusly: "We can find no basis either in law or equity sufficient to warrant the court in taking from the assets of this corporation an additional $85,000 for the purpose of satisfying the individual debts of the corporate officials." 39 N.E.2d 514. The court thus refused to enforce an executory contract. The contract in the case before us was fully executed.

But it is argued by Whitten that estoppel will not lie when the executed contract is illegal as distinguished from *ultra vires*. Support for this argument is found in Bond v. Terrell Cotton & Woolen Mfg. Co., 82 Tex. 309, 18 S.W. 691 (1891), in which a distinction between *ultra vires* acts and illegal acts is recognized. An illegal act is there defined as one which is inherently and essentially evil or immoral (malum in se), or which is expressly prohibited by specific statute (malum prohibitum), or which is against public policy. The question, then, is whether the use of corporate funds to pay the debt of an officer is an illegal act as there defined.

That the act is not inherently evil or immoral must be conceded. It must be conceded also that the act is not against public policy since only the stockholders and creditors of the corporation, not the public generally, have an interest in the matter. Is the act illegal because expressly prohibited by specific statute? We think not.

Before enactment of the Texas Business Corporation Act in 1955, the only statutory prohibition of the use of corporate funds to pay debts of corporate officials was Art. 1349, V.A.C.S., which prohibits corporations from using their means or assets "directly or indirectly for any purpose whatever other than to accomplish the legitimate business of its creation, or those purposes otherwise permitted by law." This Court held in Bond v. Terrell Cotton & Woolen Mfg. Co., supra, that this general prohibition did not render illegal an act which was otherwise merely *ultra vires*. That decision would foreclose the question presented here but for the inclusion of Art. 2.02, subd. A(6) in the Texas Business Corporation Act. Art. 2.02, subd. A provides: "Subject to the provisions of Sections B and C of this Article, each corporation shall have power: * * * (6) To lend money to, and otherwise assist, its employees, but not to its officers and directors." Art. 2.02, subd. A is by its very wording a *grant* of powers. That is made doubly clear by a reading of the other eighteen paragraphs of the Article. Considered in this context, the phrase, "but not to its officers and directors," is but a limitation on a specific power granted, not a positive prohibition.

The judgment of the Court of Civil Appeals is affirmed.