WESTINGHOUSE CREDIT CORPORA-
TION, Plaintiff and Respondent,

v.

HYDROSWIFT CORPORATION,
Defendant and Appellant.

No. 13533.

Supreme Court of Utah.

Nov. 14, 1974.

Paul N. Cotro-Manes of Cotro-Manes, Warr, Fankhauser & Beasley, Salt Lake City, for defendant and appellant.

Paul M. Halliday of Halliday & Halliday, Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Plaintiff Westinghouse Credit Corporation sued upon a written agreement by which defendant Hydroswift Corporation guaranteed payments on trust receipts on boats and equipment which were assigned to plaintiff as security for money it advanced under a financing plan. Hydroswift asserted two defenses: (1) that it was not shown that execution of the guaranty was authorized by corporate resolution; and (2) that after plaintiff had knowledge that the purchaser was in default and selling equipment in violation of its agreement, plaintiff negligently and fraudulently failed to take measures to repossess the security, which was the cause of the loss. Upon a trial to the court, it rejected defendant's contentions and made findings and judgment in favor of the plaintiff. Defendant appeals.

In the early part of 1972, the L & S Boat Company, Inc., a retail dealer in Great Falls, Montana, and the defendant Hydroswift, boat manufacturer in Salt Lake City, sought a financing arrangement by which Hydroswift would sell its boats to L & S Boat; would then assign trust receipts to plaintiff Westinghouse Credit, for which the latter would advance money to Hydroswift. Thus, instead of having its capital tied up in merchandise it had sold, Hydroswift would use the proceeds to continue its manufacturing operations. As a part of this arrangement, sometimes referred to as "floor plan financing," L & S Boat agreed to keep boats and equipment in the showroom as security for payment of the contracts; and when removed, Westinghouse Credit was to be paid.

This plan continued in operation with numerous transactions until December 20, 1972. At that time the plaintiff was advised, through its agent, that a floor check showed that L & S Boat was in violation of its agreement for two boats and two trailers valued at $4,255.37 and was not able to make payment. Plaintiff then notified Mr. Ludlow, president of Hydroswift, by telephone of the default; and a few days later, December 27, 1972, made demand by letter for payment of the L & S Boat account. Defendant refused and requested that Westinghouse itself should repossess the merchandise. Plaintiff reiterated its stand that the guaranty was unconditional and made several demands upon defendant Hydroswift to perform. Refusal and L & S Boat's subsequent bankruptcy resulted in this lawsuit.

In regard to the contention of Hydroswift that it was not shown that the guaranty agreement was executed by the corporation, these observations are pertinent: It is not to be doubted that entering into such a contract by a corporation not only usually is, but should be done, by authorization of its board of directors.[1] But like all generalities, this is subject to exceptions according to the requirements of justice and equity in individual cases. There is also a well recognized rule that a corporation may not represent to another party that it has executed a valid contract, induce the other to perform, accept the benefits, and then when it suits its interest, renege and escape the burdens of the contract.[2] By so engaging in the business and enjoying its advantages the corporation is deemed to ratify the contract, wherefore it cannot then repudiate and avoid its obligations.[3]

We turn to the facts in the light of what has just been said.[4] A key one is

1. 19 Am.Jur.2d 607, Corporations, Sec. 1183.

2. Whitten v. Republic National Bank of Dallas, 397 S.W.2d 415 (Tex.1965); Pendleton v. Williams, 198 So.2d 235 (Miss.1967).

3. White v. Western Empire Life Ins. Co., 11 Utah 2d 227, 357 P.2d 483.

4. Under the traditional rule that we look at the facts in the light favorable to the findings and judgment, see Hardy v. Hendrickson, 27 Utah 2d 251, 495 P.2d 28.

that in the original transaction Westinghouse Credit advised Hydroswift that it would not agree to the proposed financing plan unless Hydroswift would furnish written guaranty of the L & S Boat account. The requested guaranty, dated March 17, 1972, signed by Roy S. Ludlow as president of Hydroswift Corporation, was delivered to Westinghouse Credit; and on the basis thereof business was carried on for the remaining months of 1972. During that time the financing plan as recited above appears to have operated satisfactorily since Hydroswift continued to accept its payments in the regular course of business. It was not until after the difficulty developed as above set forth that the defendant Hydroswift came forward with a claim that the guaranty had not been authorized by its board of directors. It is our opinion that, in harmony with the principles hereinabove set forth, there is ample basis in the circumstances shown to support the view taken by the trial court that Hydroswift should be deemed to have executed the guaranty.

■■ Defendant's argument in support of its second defense is that after plaintiff Westinghouse Credit had noticed that L & S Boat was selling boats in violation of its agreement, and despite requests by the defendant, Westinghouse nevertheless failed and refused to take any affirmative steps to repossess the boats and protect itself and the defendant from loss. We have no disagreement with the proposition advocated by the defendant, that if it could have shown that the plaintiff violated some legal duty owed the defendant, and either negligently or fraudulently caused the loss, the obligation may have been avoided. But the defendant failed to so persuade the trial court; and the evidence does not compel any such finding. The position urged by the defendant Hydroswift seems but an effort on its part to shift to Westinghouse

the responsibility of using any legal means available to compel L & S Boat to pay off the contracts; and thus to protect defendant Hydroswift from loss under its guaranty. Whether a creditor (Westinghouse) has a duty to pursue the debtor (L & S Boat) as a predicate to action against a guarantor (Hydroswift) depends on the nature of the guarantor's promise.[5] We therefore look to the terms of the contract.[6] Its only provision relevant to that issue states:

> The undersigned [Hydroswift] does unconditionally guarantee the payment, not merely the collection, of all indebtedness, regardless of form or manner in which incurred, . . . .

On the basis of that clear and unequivocal commitment, and in accordance with what has been said herein, the trial court was justified in rejecting the defendant's contentions, and in making its findings and judgment that Hydroswift is obliged to make good on the guaranty agreement.

Affirmed. Costs to plaintiff (respondent).

CALLISTER, C. J., and ELLETT, and TUCKETT, JJ., concur.

HENRIOD, Justice (dissenting):

I respectfully dissent. I do so on what the main opinion says factually was the case,—plus one or two other facts, not controverted, not mentioned in the opinion,—but which in my opinion are dispositive of this case antithetically. These very important, uncontradicted facts are as follows:

I. The guaranty agreement on which Westinghouse *solely* relies, specifically precludes any legal action based thereon with respect to the matter of a guarantor-guarantee relationship, when it says clearly to Westinghouse that "The signature of each corporate guarantor *must be supported by a certified copy of a board resolution or*

---

5. See 38 Am.Jur.2d 1116, Guaranty, Sec. 110.

6. Jones v. Acme Bldg. Products, Inc., 22 Utah 2d 502, 450 P.2d 743.

*bylaw naming the officer or officers authorized to sign."* This was blackbordered, obviously for emphasis. There is no evidence whatever of any compliance with this clear condition precedent.

II. The boats, subject of this litigation and the "flooring" plan mentioned in the main opinion, were *sold* to the plaintiff, Westinghouse, so that it was Westinghouse's duty, and its alone, being the owner, to repossess,—which it peremptorily refused to do,—although requested so to do by Hydroswift.

The above undisputed evidence cannot be ignored by a trial court even under the appellate safety-valve that the trier of the facts has a better opportunity to observe the demeanor of the witnesses, etc.