363 P.2d 786

Eugene PETERSON, Plaintiff and Respondent,

v.

HOLMGREN LAND AND LIVESTOCK COMPANY, a corporation, Defendant and Appellant.

No. 9426.

Supreme Court of Utah.

July 26, 1961.

126

Milton A. Oman, Salt Lake City, for appellant.

Mann & Hadfield, Brigham City, for respondent.

WADE, Chief Justice.

Holmgren Land and Livestock Company appeals from a judgment granting specific performance of a contract to convey certain land to Eugene Peterson, plaintiff below and respondent herein.

The record discloses that Holmgren Land and Livestock Company, appellant herein, is a family corporation. Its stockholders, officers and board of directors consisted of the father, mother and three sons. It was incorporated for the purposes, among others, for buying, selling, leasing, trans-

ferring and otherwise acquiring or alienating real property. In the minutes of a meeting of the board of directors held September 1, 1941, it appears that its president, John P. Holmgren, advised it that there was an opportunity to acquire tax titles to certain sections of land in Box Elder County, Utah; that there was a possibility of exchanging such lands with the United States government under the Taylor Grazing Act for similar sections lying in the neighborhood of property belonging to appellant. Whereupon "[O]n motion of Parley O. Holmgren & sec by Delbert K. Holmgren, Secy Leroy P. Holmgren was authorized to enter into & do such dealings as are necessary to consummate the exchange of these lands with the proper officers of the general land office * * *."

Appellant thereafter acquired the tax titles from Box Elder County for some sections of land it had for sale and then, on October 23, 1941, filed an application with the U. S. Public Land Office pursuant to the provisions of the Taylor Grazing Act, 43 U.S.C.A. § 315 et seq., offering to exchange about an equal number of acres of land owned by it for certain selected lands of the public domain.

On October 13, 1943, Eugene Peterson, respondent herein, and other persons filed "protests" with the Federal Land Board for the disallowance of appellant's application. The persons filing "protests" were owners of land adjacent or adjoining those sought by appellant, and some of these lands intermingled with their lands. An employee of the Bureau of Land Management testified that it has been the common practice that whenever "protests" are filed that applicant and the protestants are encouraged to settle their differences by agreement.

As a result of respondent's "protest" the agreement which is the subject of this suit and which was signed and acknowledged by its then president, as well as by LeRoy P. Holmgren, its then secretary, was entered into between appellant and respondent on the 21st day of October, 1943. Therein appellant agreed that because the lands they were applying for under the provisions of the Taylor Grazing Act intermingled with the lands owned and controlled by respondent, and respondent had therefore filed a "protest," that it would sell and transfer the land which is the subject matter of this suit to respondent for the purchase price of $1 per acre. The agreement also provided for the sales or exchanges of lands between the parties to this agreement and third persons. In consideration of the above, respondent agreed to withdraw his "protest." Pursuant to this agreement respondent notified the District Land Office that he was withdrawing his "protest" because a satisfactory agreement had been entered between him and the applicants. Respondent carried out his part of the agreement pertaining to third persons and the minutes

of a meeting of appellant held on November 29, 1943, show that respondent sold and exchanged certain lands mentioned in the agreement to a third person mentioned therein.

Respondent recorded its agreement with appellant in the Box Elder County Recorder's office on May 17, 1948. In 1956 appellant received the patent for the land which it had agreed to sell respondent and this patent was recorded on July 30, 1956. Although during the years in which appellant's application was pending respondent had made frequent inquiries as to whether patent had been issued, during the last few years before patent actually issued his inquiries were infrequent and he did not learn of the issuance of the patent until a few months before he commenced this suit. At that time he made demand upon respondent for the conveyance of the land that it had agreed to sell him, and upon receiving no reply this suit was started. There was evidence that the land had greatly increased in value from the time the contract was executed and this suit was brought.

Appellant contends that specific performance should not have been granted because (1) the record is completely devoid of evidence of authorization by the corporation for the execution of the contract, (2) the consideration is inadequate to support a decree of specific performance; (3) the contract is void and illegal as being in violation of a statute and against public policy and (4) because it was executed under economic duress.

The court found and we agree that the evidence fails to sustain any of these contentions.

As to the first contention that there was no evidence of authorization by the board of directors of the corporation for the execution of the contract, it must be kept in mind that one of the purposes for which the corporation was formed by the family of which it was composed was the acquiring and alienation of real property in connection with ranching and farming. The father of the family was the president of the corporation. It was at his home and at his behest that meetings of the board of directors of the corporation were held. The minutes of these meetings were not kept in as professional a manner as might be expected from a corporation whose sole stockholders were not members of one family and were for the most part written in a brief and indefinite manner. Although there does not appear in the minutes any express authorization by the board of directors to enter into the particular contract which is the subject of this action, there is express authorization granted by the board to its secretary LeRoy P. Holmgren to enter into dealings which might prove necessary to acquire the tax titles from Box Elder County and exchange them for other sec-

tions "with the proper officers of the general land office." Appellant's present president, Delbert Holmgren, who was a member of its board of directors at the time this authorization was granted, admitted that entering into such an agreement as the one sued upon herein might possibly be one of such "dealings" contemplated in the authorization of its secretary to consummate the objective of the contemplated acquirement and exchange of lands. Even if the minutes of the board of directors were insufficient to show express authorization, the facts that it was a family corporation in which the father was the president and actively engaged in furthering its purposes, and the articles of incorporation provided for the acquirement and alienation of real property, the finding of the court that the contract was authorized should be sustained on the ground that there was a binding ostensible authority in its president. As stated in 13 Am.Jur., Sec. 890, pages 871–872:

> "If a corporate officer assuming to contract on behalf of the corporation is one to whom authority to make such a contract may be given, a person dealing with him in good faith is not affected by the fact that the proper steps to clothe him with such authority were not taken." [1]

Appellant's contentions that respondent should not have been granted the remedy of specific performance even if the contract was authorized because the consideration was inadequate; the contract was in violation of a statute and against public policy; and respondent was guilty of laches and economic duress, are not supported by the evidence.

The record discloses that others who were owners of lands adjacent to those sought by appellant as well as respondent "protested" appellant's application for the exchange of lands under the provision of the Taylor Grazing Act. Respondent's reason for "protesting" was that the acquirement of these lands by appellant could interfere with the operation of his sheep business. In order to avoid the difficulties apprehended by respondent, appellant and respondent got together and worked out a plan to straighten their boundary lines. This plan included the buying or exchanging of lands with other persons as shown in the contract. Respondent testified he fulfilled his obligation under the contract with reference to a third person and there is a fair inference from the minutes of the corporation that appellant did likewise in effectuating the agreement with reference to third persons.

▮▮ As to the adequacy of the consideration for the contract there was evidence that at the time it was executed the

1. 13 Am.Jur., Sec. 890, pages 870–872; White v. Empire Life Ins. Co., 11 Utah 2d 227, 357 P.2d 483.

land in question was worth between $1 and $1.50 per acre. Through no fault of respondent, appellant was not able to effectuate the exchange of lands with the United States Government until 1956. In the meantime, and before it had obtained a patent to the land, appellant broke up the lands, which is the subject matter of this agreement, changing its use from grazing to farming and greatly enhancing its value as land. The evidence is uncertain when respondent acquired knowledge of appellant's activities on the land, but the fair inference is that it was after the change had been accomplished because respondent testified that he had been told about it by a man who had done the work for appellant. Regardless of respondent's knowledge or lack of knowledge it is not apparent that appellant would have been deterred in acting as it did, since it was a party to the contract and therefore knew or should have known of its existence[2] and respondent's rights thereunder to purchase such lands from it for the consideration stated therein. This is especially true since respondent recorded the contract in 1948 in the office of the County Recorder of Box Elder County, which was before appellant improved the land; and for the further reason that the present manager and president of appellant and the one who caused the improvements to be made, although denying knowledge of the contract, was at all times since the incorporation of appellant a member of its board of directors and was present at the meetings at which discussions were held relative to activities carried on in attempting to consummate the exchange of its tax title lands for the government lands. In view of all the circumstances the consideration was not inadequate at the time the contract was executed nor was it inequitable to require its enforcement because the property had been made more valuable before respondent had the right to enforce the provisions of his contract by the wrongful acts of appellant. Neither was respondent guilty of laches in enforcing his rights. Although the contract was executed in 1943, appellant did not acquire title until 1956 and respondent did not have actual knowledge of the granting of the patent to appellant until a third party advised him of the fact in 1958, at which time he immediately checked the record in the County Recorder's Office and then immediately made demand upon appellant to convey the property to him. Upon refusal this action was commenced within six months.

Without belaboring the record any further, it is sufficient to say that there was nothing illegal or inequitable about the transaction when it was entered into by the parties thereto. Both parties had equal knowledge of all the facts and were moti-

2. Gay v. Young Men's Consolidated Cooperative Mercantile Institution, 37 Utah 280, 281, 107 P. 237.

vated by a desire to arrange boundary lines so that each would benefit and there would be no interference with each other in their respective projects. The contract was the result of this desire to iron out the difficulties which would have been present had the government conveyed all of the lands initially requested by appellant in its application in exchange for the sections it held by tax title and was not the result of an attempt to interfere with the bidding or purchasing of land offered for sale as proscribed in Section 1860, Title 18 U. S. Code.

Affirmed. Costs to respondent.

HENRIOD, McDONOUGH, CALLISTER, and CROCKETT, JJ., concur.