447 P.2d 38

**MOVIE FILMS, INC., a corporation,
Plaintiff and Respondent,**

v.

**FIRST SECURITY BANK OF UTAH, N. A.,
a corporation, Defendant and Appellant.**

No. 11259.

Supreme Court of Utah.

Nov. 8, 1968.

2

Don B. Allen, of Ray, Quinney & Nebeker, Salt Lake City, for appellant.

L. E. Midgley, Salt Lake City, for respondent.

CROCKETT, Chief Justice.

Plaintiff Movie Films, Inc. sues the defendant First Security Bank to recover funds which it claims the Bank disbursed on checks not bearing the signatures of the two corporate officers as required by the signature card which fixes the agreement for withdrawals. Upon a trial to the court without a jury judgment was given for the plaintiff in the amount of $5,450.93.

Defendant Bank appeals, contending:

(1) That Shawn D. Patterson, president and director of the plaintiff, had ostensible authority to effect a change of signature cards and to withdraw the funds solely on his signature; and

(2) That even if contention (1) above fails, the judgment should be reduced by $3,170.34 because that amount of money actually went to the benefit of the corporation.

In July, 1966, Shawn D. Patterson as president and Rex L. Jensen as vice president formed the plaintiff corporation, Movie Films, Inc., for the purpose of marketing movie cameras and accessories by direct sales to customers in Utah. Mr. Jensen, who resided in Las Vegas, Nevada, and was carring on a similar business there, advanced the initial capital to get the business started, including $1,000 as working capital, $500 for attorney's fees and incorporation costs, and furnished a beginning inventory of one and one-half dozen cameras. Mr. Patterson as president of the new corporation was to manage the Salt Lake business, employing salemen on a commission basis.

The corporation bank account was opened in defendant bank. The signature card and a corporate resolution left with the bank required that checks were to be paid only on the signatures of both Patterson and Jensen. Shortly thereafter, when the Bank refused to honor checks bearing only the signature of Patterson as president, he went into the Bank and talked to Mr. Clair McKell, Assistant Manager. He said there had been some misunderstanding; that he could not conduct the business in Salt Lake with Mr. Jensen in Las Vegas if he had to go through the cumbersome procedure of getting both signatures on the checks. It was suggested that Patterson execute a new signature card and obtain another resolution of the corporation authorizing withdrawals on his signature only; and he took forms furnished by the Bank to accomplish that purpose. Although neither the forms nor the resolution were returned to the Bank, it proceeded to pay the several checks bearing Patterson's signature only on which this lawsuit is based.

**4**

Within a month after the business was started Patterson absconded with the cash and inventory belonging to the corporation.

■ The cases which hold that when the president of a corporation deals exclusively for the corporation, and the corporation takes the benefit of the transaction, it may be bound on the basis of ostensible authority and/or estoppel[1] are not controlling in the instant situation. The evidence does not compel a conclusion that in drawing the checks Patterson was either acting exclusively for the corporation or that it derived benefit from the transactions. Indeed it seems reasonable to believe to the contrary, since it is now apparent that he was in the process of cheating the corporation, and shortly absconded with its money and its assets. There is a further consideration which lends support to the trial court's refusal to find that the Bank could place reliance on Patterson's "ostensible" authority to sign the checks for the plaintiff corporation. The evidence shows plainly that the Bank was not relying on any such "ostensible" authority. The Bank's contention in that regard is squarely inconsistent with the express arrangement it had with the plaintiff corporation: there was an agreement in writing that the Bank would honor checks of the corporation only upon both signatures; and the Bank had itself insisted on the need of a resolution of the corporation authorizing the change.[2] It is the duty of the drawee bank not to disburse funds except upon checks or orders signed properly by the drawer in accordance with the bank's agreement with him.[3]

■ The defendant's second contention: that the plaintiff corporation should not have a judgment against the Bank for money withdrawn by the questioned checks, and also have the benefit of the same money, is sound enough. The difficulty here is that the trial court rejected the defendant's factual hypothesis. The analysis of the problem thus raised proceeds thus: the fact being shown, as above indicated that the Bank was in error in cashing the checks, established the right of the plaintiff to recover the amount thereof. The contention that part of the money went to the benefit of the plaintiff corporation is an affirmative defense upon which the defendant has the burden of proof. The trial court's re-

---

1. See Peterson v. Holmgren Land & Livestock Co., 12 Utah 2d 125, 363 P.2d 786; and White v. Western Empire Life Ins. Co., 11 Utah 2d 227, 357 P.2d 483; 13 Am.Jur. §§ 8.0–872.

2. In this respect differing from situations covered by Sec. 22–1–9, U.C.A.1953, (Uniform Fiduciaries Act) the purpose of which is to protect the bank where it allows withdrawals on the personal order of a fiduciary who may be breaching his trust, unless the latter fact is known to the bank.

3. See Secs. 70A–3–401 and 70A–3–404, U.C.A.1953 (Uniform Commercial Code).

fusal to so find, could only be reversed if the evidence compelled such a finding. The evidence which the defendant relies on to fulfull that requirement relates to two items. One is that a check for $1,820.34 was paid to Railway Express for a C.O.D. shipment of movie cameras from the company supplier. From this defendant argues that it reasonably follows that the company received these cameras and thus the benefit of that money. The other is that inasmuch as it is shown that 18 contracts for the sale of movie cameras were entered into, and that Mr. Patterson was to receive $75 commission on each unit, it should be assumed that he was entitled to $1,350 of the money he withdrew from the bank account.

■ Defendant's argument that the evidence just recited reasonably justifies a conclusion that the plaintiff corporation got the benefit of the two amounts of money above mentioned is not to be dismissed as being without plausibility. However, that is not our problem on review. It is the converse thereof: whether there is a reasonable basis in the evidence to support the findings and judgment of the trial court. Where there is evidence, even where it is undisputed, from which reasonable minds can draw different inferences, it is his prerogative to draw the inference he believes most rea-sonable therefrom; and if they find support in the evidence they should not be disturbed on review.[4]

■■ If we look at the total picture as shown by the evidence in the case, as should be done, the conclusion defendant argues for is not the only reasonable deduction to be drawn from the evidence. It should be noted that except for the facts just stated above, there is nothing to indicate with any certainty that either the shipment of movie cameras, or that $1,350 of the money withdrawn, went to the benefit of the company. Trying to understand how it can fairly be said that the plaintiff company would owe $1,350 in commissions to a man who absconded with cash and assets far in excess of that value is perplexing indeed. Particularly in view of the fact that it has now become apparent that Patterson was taking for himself whatever he could get, it does not seem unreasonable to believe, as did the trial court in making the express finding, that:

> The proceeds of the foregoing checks were not used for any corporate obligations of the plaintiff, and were converted either to the personal use of the said Shawn D. Patterson or for his personal obligations for which the plaintiff corporation was not responsible.

4. See Harding v. Allen, 10 Utah 2d 370, 353 P.2d 911, and authorities therein referred to; and In re Appeal of Roberts Construction Co., 172 Neb. 819, 111 N.W. 2d 767.

**6**

Affirmed. Costs to plaintiff (respondent).

CALLISTER, TUCKETT, HENRIOD, and ELLETT, JJ., concur.