**Cleo B. MASON, Plaintiff and Appellant,**

**v.**

**WESTERN MORTGAGE LOAN CORPORATION, Defendant and Respondent.**

No. 18951.

Supreme Court of Utah.

Aug. 30, 1985.

Jackson Howard, Provo, for plaintiff and appellant.

Gregory S. Bell and Lester A. Perry, Salt Lake City, for defendant and respondent.

ZIMMERMAN, Justice:

Plaintiff Mason appeals from the trial court's dismissal of her claim against defendant Western Mortgage Loan Corporation for wrongfully disbursing construction loan proceeds to her contractor. The trial court found that Western had breached the agreement, but ruled that Mason had failed to establish that she had been damaged. We reverse and remand for entry of judgment in Mason's favor.

In January of 1977, Mason and a building contractor entered into an agreement for the construction of two houses on two building lots she owned. The contractor had submitted itemized bids of $28,435 and $25,724, respectively, for the two houses. Simultaneously with the execution of the construction contract, Mason entered into two identical standard form loan agreements with Western under which Western agreed to furnish Mason with funds for the construction of the houses. The amounts to be advanced under the two agreements corresponded to the amounts set forth in the two bids. The loan documents contemplated that the loan proceeds would be held by Western and disbursed only for labor and materials used to construct the houses in accordance with the bids attached to the loan agreements. The loans were secured by the houses and the underlying real estate.

As construction proceeded, the contractor secured funds from Western by presenting it with forms entitled "Contractor's Authorization for Payment." These forms specified the amount to be drawn from the loan proceeds and identified the person or entity to whom payment was to be made. During the first and last stages of construction, these slips bore the signa-

tures of both the contractor and Mason. During the middle stages of the work, however, when most of the funds were disbursed, the slips were signed only by the contractor.

Several months after construction began, Mason was informed that all of the loan proceeds had been disbursed. Ten to twenty-five percent of the work on the houses remained to be done. The contractor's insolvency prevented recovery against him. Mason brought suit against Western, contending that Western had breached its contract with her by disbursing loan proceeds to the contractor without her signature or without adequate assurance that the proceeds were going into the houses, as required by the loan agreements.

At trial, Mason argued that the houses would have been constructed within the bid limit if her authorization had been required on all payment slips or, at least, that she would have been in a position to enforce or renegotiate the bids with her contractor. She introduced evidence that nearly $29,000 of the $54,159 loaned had been disbursed to the contractor and the subcontractors at the contractor's sole request and approval. Mason conceded that some portion of this $29,000 was used in constructing the houses, but argued that because of Western's breach it was impossible for her to ascertain with any reasonable degree of accuracy what portion of these funds was wrongfully disbursed. The trial court found that Western had breached its agreements with Mason, but dismissed her claim because she was unable to show what portion of the proceeds had gone into the two houses and what portion had been otherwise diverted.

We hold, as a matter of law, that Mason had satisfied her burden of proving damages. Once Mason established that Western had breached its contract with her by disbursing nearly $29,000 in violation of the loan agreements, she had adduced sufficient proof to support an award of damages in that amount. To avoid all or any part of this liability, Western had to show that some or all of the money it paid directly to the contractor in violation of the loan agreements actually was disbursed for work done or materials furnished and incorporated into the two houses. The language of the standard form agreements that Western used to state the terms of its bargain with Mason dictates this result.

Under the terms of the loan contracts, Mason borrowed funds from Western to be used solely in constructing the two houses. Pursuant to paragraph 5 of the agreements, Western retained the funds and agreed that it would disburse them "from time to time as the construction of the improvements progress[ed] in accordance with [the contractor's itemized bids] attached hereto, in amounts respectively equal to the value of the labor and materials actually incorporated in the improvements...." Western retained the right to disburse these funds either to Mason for payment to others or, at its option, directly to contractors, materialmen, or laborers. However, consistent with the underlying purpose of the contract, all such disbursements were to be only "for work done or labor furnished in connection with such improvements."[1]

Even if the language of paragraph 5 were less clear, a review of the whole agreement leaves no real question as to Western's duties in disbursing the loan proceeds. Had Western released the funds to Mason, she could have taken appropriate steps to ensure that the funds were dis-

---

**1.** Paragraph 5 of the two standard form construction loan agreements provides as follows:

5. Subject to the provisions of this Agreement, the Account shall be disbursed by the Lender from time to time as the construction of the improvements progress[es] in accordance with [the contractor's itemized bids], in amounts respectively equal to the value of the labor and materials actually incorporated in the improvements since the date construction commenced or since the date of the immediately preceding disbursement from the Account, as the case may be. Such disbursements may be made to [Mason], or, at the option of the Lender, may be made to contractors, materialmen and laborers, or any of them, for work done or labor furnished in connection with such improvements.

bursed only for work actually done on the houses. Indeed, under paragraph 6 of the agreement, Mason had rather extensive record keeping and other obligations that were specifically designed to assure Western that, in fact, the funds were going into the project. Construing the terms of paragraph 5 in light of the purpose of the contract, it is clear that when Western opted to make payments directly to the contractor or other suppliers, it had an obligation, parallel to Mason's obligation under paragraph 6, to ensure that the funds it disbursed were for work done or materials furnished and incorporated into the houses. For just as Western had a legitimate contractual right to assure itself that the loan proceeds actually were incorporated into the premises securing the loan, Mason had an equally strong contractual right to assure herself that the proceeds were disbursed only for the purpose contemplated by the loan documents. The uncontradicted evidence indicates that Western made no bona fide effort to determine whether the disbursed funds were applied to the scheduled project.

In *Movie Films, Inc. v. First Security Bank*, 22 Utah 2d 1, 447 P.2d 38 (1968), we dealt with an analogous factual situation. There, a bank had agreed to disburse funds from a corporation's account only when the checks were signed by both the corporate president and the vice president. The bank then paid several checks bearing only the president's signature. In affirming a judgment against the bank, we held that the bank's failure to comply with the terms of the agreement entitled the plaintiff to re-

cover the funds wrongfully disbursed; if the bank disputed the corporation's claim for damages, it was required to go forward with the evidence to establish that the funds wrongfully disbursed were actually applied to the corporation's benefit. 22 Utah 2d at 4, 447 P.2d at 40.[2]

These principles apply equally to the instant case. Western bore the burden of establishing that the wrongfully disbursed funds were used for Mason's benefit. Therefore, the trial court should have entered judgment in Mason's favor in the amount of the funds wrongfully disbursed to the contractor less any amount Mason conceded or the bank established was used to her benefit.

Because we have resolved the issues in this case based on the language of the contract, we need not consider Mason's claim that the trial court improperly excluded parol evidence.

The matter is reversed and remanded to the trial court for entry of judgment in Mason's favor in the amount of damages established at trial. Costs to appellant.

HALL, C.J., and HOWE and DURHAM, JJ., concur.

STEWART, J., concurs in the result.

---

**2.** In *Movie Films,* the Court said that any contention that the corporation benefited by the wrongful disbursement of funds was an affirmative defense upon which the bank bore the burden of proof. 22 Utah 2d at 4, 447 P.2d at 40. This statement is not entirely correct. The bank did not assert that the corporation failed to mitigate its damages. Mitigation of damages is an affirmative defense. *Pratt v. Board of*

*Education,* Utah, 564 P.2d 294, 298 (1977). Rather, the bank only disputed the corporation's damage claim. While the bank did have the burden of going forward with the evidence to show that plaintiff's harm was not as great as its proof tended to show, it did not carry a "burden of proof" because it was not asserting an affirmative defense.