2010 UT App 198

**CHECK CITY, INC., Plaintiff and Appellee,**

v.

**L & T ENTERPRISES, Defendant and Appellant.**

No. 20090685–CA.

Court of Appeals of Utah.

July 22, 2010.

Steven F. Allred, Orem, and Jim F. Lundberg, Mapleton, for Appellant.

Tyler S. Young, Provo, for Appellee.

Before Judges DAVIS, McHUGH, and ORME.

## MEMORANDUM DECISION

ORME, Judge:

¶ 1 Check City, Inc. filed a common law negligence action alleging that L & T Enterprises knew or should have known that the checks L & T issued, which Check City cashed, were being cashed without proper indorsements. The checks were made payable to one of L & T's subcontractors *and* one of that subcontractor's suppliers, but the checks were indorsed only by the subcontractor, who had a long, positive history with Check City.[1] As the negligence action advanced to trial, Check City suggested that L & T's duty was established under sections of Utah's Uniform Commercial Code (UCC). The district court ultimately ruled that UCC section 70A–3–406 established that "L & T owed Check City a duty" and that L & T breached that duty, with respect to all but the first two checks, by "fail[ing] to exercise ordinary care and substantially contribut[ing] to 'an alteration of an instrument or forged signature.'" *See generally* Utah Code Ann. § 70A–3–406(1) (2009). L & T appeals and argues that, given the facts of this case, the district court incorrectly imposed a duty based on section 70A–3–406.[2] "The question

---

1. Although the reverse side of the checks contained what at cursory glance might appear to be two signatures, even minimal attention to those signatures shows they are the subcontractor's business name and the signature of a presumably authorized employee, albeit in an order that is the opposite of what is customary. Both entries are in the same handwriting, and a prudent person cashing the checks could not possibly have mistaken the two entries for proper indorsements by both the subcontractor and the subcontractor's supplier.

2. Check City asserts that L & T's specific arguments concerning the applicability of section 70A–3–406 were not preserved for appeal. We note that Check City quoted section 70A–3–406 in its trial brief but did not provide any legal or factual arguments as to how the section would create a duty in this case. Other than the quote in Check City's trial brief and a conclusory state-

of whether a duty exists is a question of law" that we review for correctness. *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC,* 2009 UT 65, ¶ 27, 221 P.3d 234 (citation and internal quotation marks omitted).

¶ 2 "Articles 3 and 4 of the U.C.C. outline a scheme for allocating the loss resulting from an altered [or forged] check among the parties involved in the check processing system . . . [through] a burden-shifting framework." *J. Walter Thompson, U.S.A., Inc. v. First BankAmericano,* 518 F.3d 128, 131 (2d Cir. 2008).[3] The UCC differentiates between forged indorsements and missing indorsements. *See John Hancock Fin. Servs., Inc. v. Old Kent Bank,* 346 F.3d 727, 729, 731 (6th Cir.2003) (affirming the district court's decision not to "apply UCC § 3–406's preclusion defense" when the indorsements were not forged but were instead signed in a different name than that of the payee); *Bridgeport Firemen's Sick & Death Benefit Ass'n v. Deseret Fed. Sav. & Loan Ass'n,* 735 F.2d 383, 386 & n.2 (10th Cir.1984) (determining that because the document contained a forged signature the case should be decided under the law applicable to forged signatures rather than "[t]he authorities which deal with adequacy of one signature when two are required"); *Perini Corp. v. First Nat'l Bank,* 553 F.2d 398, 403–04, 412–14 (5th Cir.1977) (discussing the different policies and rules associated with forged indorsements and incomplete indorsements).

¶ 3 Here, the district court based its ultimate ruling on UCC section 70A–3–406, which precludes a party that substantially contributes to an *altered or forged* instrument from asserting a claim against a party who accepts the instrument in good faith. *See* Utah Code Ann. § 70A–3–406(1). However, the checks in this case were not altered or forged, but, instead, the indorsement of one of the joint payees was missing.[4] Thus, the court based L & T's liability on an inapplicable section of the UCC, even though the action was based on common law negligence.[5] *Cf. Travelers Cas. & Sur. Co. of Am. v. Wells Fargo Bank N.A.,* 374 F.3d 521, 524 (7th Cir.2004) ("Although the Uniform Commercial Code . . . contains elaborate provisions regulating commercial paper, including checks, [the plaintiff] invoked a common law duty of banks—a duty the UCC has not superseded—not to honor checks in the circumstances of this case."). *See also Wachovia Bank, N.A. v. Federal Reserve Bank,* 338 F.3d 318, 325 (4th Cir.2003) (noting that section 3–406 "provides for a defense but does not expressly create a cause of action").

¶ 4 On the facts of this case, UCC section 70A–3–406 simply did not impose any duty in favor of Check City on L & T, and Check City bears the loss for cashing L & T's checks made payable to two payees when only one payee had indorsed them. *See Pacific Metals Co. v. Tracy–Collins Bank & Trust Co.,* 21 Utah 2d 400, 446 P.2d 303, 305

---

ment that "it is clear that L & T owed Check City a duty of care," there was no mention—by either party—of the duty implications of section 70A–3–406. L & T consistently argued that it owed Check City no duty, including under the UCC—an argument the district court acknowledged. Given the somewhat unusual circumstance of a trial court ruling based on a section that, while referred to, was not argued by either party, and given L & T's insistence that no duty existed under the UCC, it is appropriate that we address the duty implications of section 70A–3–406.

3. Because of the limited Utah case law associated with the relevant sections of the UCC and because the uniform nature of the Uniform Commercial Code makes its provisions similar across the country, we cite to several federal court cases that have dealt with the issues encountered in this case. While these cases are not controlling, they are persuasive.

4. Check City argues that L & T changed its position from one that acknowledged the checks were forged to arguing on appeal that the checks were missing a signature. The references on which Check City relies were at most ambiguous, and in any event the undisputed evidence at trial showed the checks were missing a signature, not that they were forged.

5. In so noting, we do not mean to suggest that common law negligence jurisprudence has free rein whenever a case involving commercial paper is brought on a negligence theory. Quite the opposite is true. *See, e.g., John Hancock Fin. Servs., Inc. v. Old Kent Bank,* 346 F.3d 727, 733 (6th Cir.2003) ("[I]t is not for the courts to unsettle the UCC's carefully drawn balance by introducing comparative fault principles taken from tort law.") (citation and internal quotation marks omitted).

(1968) (stating that a party accepting a check has a "duty to comply with the direction of the" drawer and can properly accept the check only after all payees have properly indorsed the check); *Perini Corp.*, 553 F.2d at 413–14 (rejecting as a basis for liability in a missing indorsement case the argument that "if someone in the collection process had returned the check for proper indorsement" a party's loss would have been prevented). *Cf. Movie Films, Inc. v. First Sec. Bank*, 22 Utah 2d 1, 447 P.2d 38, 39–40 (1968) (determining that a bank was liable to a corporation for checks the bank cashed when those checks did not include "the signatures of the two corporate officers as required by the signature card" and stating that "[i]t is the duty of the drawee bank not to disburse funds except upon checks or orders signed properly by the drawer in accordance with the bank's agreement with him"). Accordingly, the monetary judgment in favor of Check City cannot stand.[6]

¶ 5 L & T also argues that the district court incorrectly granted Check City summary judgment on L & T's counterclaim. "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations and internal quotation marks omitted). Although L & T's verified counterclaim and verified memorandum[7] stated that it had paid the joint payee who did not indorse the check approximately $39,000 for materials so as to obtain lien releases and that Check City's negligence caused L & T to pay more, the

assertion, even if taken as true, takes L & T only so far. It was unclear how Check City's alleged negligence in cashing approximately $19,000 in checks without the proper indorsements would have caused L & T to pay approximately $20,000 more than it otherwise would have been required to pay, especially given that Check City's bank returned the approximately $19,000 initially paid by L & T. Because L & T did not adequately support its claim that Check City's alleged negligence caused L & T's damages, the district court correctly granted summary judgment in Check City's favor on L & T's counterclaim. *See generally Franco v. Church of Jesus Christ of Latter-day Saints*, 2001 UT 25, ¶ 36, 21 P.3d 198 ("[M]ere conclusory allegations in a pleading, unsupported by a recitation of relevant surrounding facts, are insufficient to preclude ... summary judgment.") (omission in original) (citation and internal quotation marks omitted). Therefore, we affirm the district court's grant of summary judgment on L & T's counterclaim.

¶ 6 The judgment in favor of Check City on its complaint is reversed; the judgment in favor of Check City on L & T's counterclaim is affirmed. The parties will bear their own costs on appeal.

¶ 7 WE CONCUR: JAMES Z. DAVIS, Presiding Judge, and CAROLYN B. McHUGH, Associate Presiding Judge.

**6.** Given our disposition, we do not address L & T's other arguments, which concern causation and the allocation of negligence.

**7.** The verified counterclaim and verified memorandum in opposition to summary judgment did not meet the requirements for an affidavit for purposes of rule 56, *see* Utah R. Civ. P. 56(e); *Pentecost v. Harward*, 699 P.2d 696, 698 (Utah 1985), but neither were they objected to, and thus, any argument relating to the verified status of the documents was waived, *see Pentecost*, 699 P.2d at 699. We note, however, that only factual assertions, and not legal arguments, can properly be verified, *see id.* at 698, and there were few factual matters addressed in the memorandum.